1
2
3
4
5
6
7
8
9
10
11
12
13
14

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

v.

JOSE SERRANO-GUERRA,

Defendant.

CASE NO. 12-CR-1927-IEG

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT DUE TO INVALID DEPORTATION**

[Doc. No. 20]

15
16
17
18

Presently before the Court is Defendant Jose Serrano-Guerra's ("Defendant") motion to dismiss the indictment due to invalid deportation.  [Doc. No. 20, Def.'s Mot.]  For the following reasons, the Court **DENIES** the motion to dismiss the indictment.

19

## BACKGROUND

20
21
22
23

The following facts are mainly from Defendant's motion.  Defendant states that they are based on information and evidence provided by the Government in discovery.  Defendant does not admit the accuracy of this information.  [Doc. No. 20-1, Def.'s Mot. at 1.]

24
25
26
27

Defendant came to the United States in 1985 when he was approximately 10 years old.  He has four children, all of whom are U.S. citizens.  Many of his family members are in the United States and are either U.S. citizens or lawful permanent residents ("LPRs").  [Id.]  On February 3, 1994, Defendant pled guilty to Assault

28

1    with a Firearm in violation of Penal Code § 245(a)(2) in California Superior Court.[1]
2    He was sentenced to seven years in prison.  Defendant was a minor when he
3    committed the offense on May 14, 1993.  [Id. at 2; Ex. B.]

4         On July 10, 1997, Defendant was served with a Notice to Appear in
5    immigration court on the grounds that he was subject to removal.  The ground for
6    removal was that he entered the United States in 1985 without being admitted or
7    paroled after inspection by an immigration officer.  [Doc. No. 20-1, Ex. C.]  On July
8    15, 1997, Defendant appeared in immigration court and admitted the allegations
9    against him.  The Immigration Judge ("IJ") found Defendant removable.  [Doc. No.
10   20-1, Def.'s Mot. at 2; Ex. D.]  Defendant alleges that the IJ did not advise him of
11   any relief available to him.  [Id.; Doc. No. 20-1, Def.'s Mot. at 2.]  Defendant
12   waived his right to appeal the IJ's order.  [Id. at 3; Ex. D.]

13        The Government states that Defendant has been removed twice from the
14   United States.  Defendant was first removed to Mexico on July 30, 1997.  [Doc. No.
15   23-1, Ex. 1; Doc. No. 23, Govt.'s Opp. at 2-3.]  Defendant then reentered the United
16   States on around August 1, 2008.  His 1997 Order of Deportation was reinstated on
17   August 16, 2010.  [Id. at 3; Doc. No. 23-1, Ex. 4.]  Defendant departed the United
18   States on August 16, 2010.  [Doc. No. 23, Govt.'s Opp. at 3; Doc. No. 23-1, Ex. 6.]
19   On March 23, 2012, Defendant attempted to enter the United States without
20   inspection.  [Doc. No. 20-1, Def.'s Mot. at 3.]  Defendant was indicted on May 16,
21   2012.  [Doc. No. 1.]  Defendant subsequently filed the instant motion to dismiss the
22   indictment due to invalid deportation.  [Doc. No. 20, Def.'s Mot.]

23                              **DISCUSSION**
24   **I.    Collateral Attack on a Removal Order**
25        Because the underlying removal order serves as a predicate element of 8

26

27        [1] Section 245(a)(2) states:  "Any person who commits an assault upon the person of another with a
28   firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail
     for not less than six months and not exceeding one year, or by both a fine not exceeding ten thousand dollars
     ($10,000) and imprisonment."  Cal. Penal Code § 245 (West).

U.S.C. § 1326, a defendant may collaterally attack the removal order under the due process clause.  United States v. Camacho-Lopez, 450 F.3d 928, 930 (9th Cir. 2006).  In order to succeed in collaterally attacking an order of deportation under 8 U.S.C. § 1326, a defendant must demonstrate that:  (1) "the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair."  8 U.S.C. § 1326(d).  The Court first addresses fundamental unfairness.

### A.    Fundamental Unfairness

A removal order is "fundamentally unfair" if (a) the deportation proceedings violated the alien's due process rights and (b) the alien suffered prejudice as a result.  United States v. Arias-Ordonez, 597 F.3d 972, 976 (9th Cir. 2010).

### 1.    Violation of Due Process Rights

Regulations at the time of Defendant's removal provided that an IJ must "inform the respondent [in a deportation hearing] of his apparent eligibility to apply for any of the benefits [of relief from deportation] enumerated in this paragraph and . . . afford him an opportunity to make application therefor during the hearing."  8 C.F.R. § 242.17(a); see also United States v. Arce-Hernandez, 163 F.3d 559, 563 n.4 (9th Cir. 1998).  An IJ's failure to advise an alien of his right to apply for relief from removal violates the alien's due process rights, as it deprives him of a meaningful opportunity for judicial review.  United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000); Arce-Hernandez, 163 F.3d at 563.

Defendant argues that his due process rights were violated when the IJ failed to advise him of his possible eligibility of relief from removal under § 212(h).  [Doc. No. 20-1, Def.'s Mot. at 5.]  The Government argues that Defendant's due process rights were not violated.  The Government contends that Defendant was not eligible for relief from removal under INA § 212(h); therefore, the IJ was not

1   required to advise him of this potential relief.  [Doc. No. 23, Govt.'s Mot. at 6-7.]

2       However, § 212(h), on its own, would not have afforded Defendant relief

3   from removal as Defendant was removed from the United States on the basis of

4   being an alien who had not been admitted or paroled.  Section 212(h) only provides

5   waivers of certain criminal grounds of inadmissibility.  At the time of Defendant's

6   removal in 1997, § 212(h) stated the following:

7       The Attorney General may, in his discretion, waive the application of
        subparagraphs  (A)(i)(I),  (B),  (D),  and  (E) of subsection  (a)(2) of this
8       section and subparagraph (A)(i)(II) of such subsection insofar as it relates
        to a single offense of simple possession of 30 grams or less of marijuana
9       . . . .

10  8 U.S.C. § 1182(h); INA § 212(h) (1997).  Subsection (a)(2) pertains to "criminal

11  and related grounds."  8 U.S.C. § 1182(a)(2); INA § 212(a)(2).  The subparagraphs

12  listed in § 212(h) correspond to the following:  a crime involving moral turpitude

13  ((A)(i)(I)); multiple criminal convictions ((B)); prostitution and commercialized

14  vice ((D)); aliens involved in serious criminal activity who have asserted immunity

15  from prosecution ((E)); and violation of any law or regulation relating to a

16  controlled substance ((A)(i)(II)).

17      The Ninth Circuit has summarized § 212(h) as follows:  "Section 212(h)

18  authorizes the Attorney General to waive certain criminal grounds of

19  inadmissibility, including a crime involving moral turpitude, a single conviction of

20  simple possession of thirty grams or less of marijuana, multiple criminal

21  convictions, prostitution, and offenses by diplomats asserting immunity from

22  prosecution for serious criminal activities."  Hing Sum v. Holder, 602 F.3d 1092,

23  1094 (9th Cir. 2010) (citing 8 U.S.C. § 1182(h); INA § 212(h)).  Section 212(h)

24  "provides one of the few forms of relief available to non-citizens who have been

25  convicted of aggravated felonies."  Hing Sum, 602 F.3d at 1094.

26      In the present case, Defendant was removed for being an alien present in the

27  United States without being admitted or paroled.  [Doc. No. 20-2, Ex. C at 11; Doc.

28  No. 20-2, Ex. D at 14.]  Although Defendant does have a conviction for assault with

12cr1927

a firearm under California Penal Code § 245(a)(2), which is an aggravated felony, United States v. Heron-Salinas, 566 F.3d 898, 899 (9th Cir. 2009), Defendant was not removed under a criminal ground.  The Notice to Appear, dated July 10, 1997, states that Defendant is "subject to removal from the United States pursuant to the following provision(s) of law:  212(a)(6)(A)(I) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at anytime or place other than as designated by the Attorney General." [Doc. No. 20-2, Ex. C at 11.]

Further, during the removal hearing, the IJ informed Defendant that the "[G]overnment says you are not [a] citizen[] of the United States [unintelligible] native[] and citizen[] of Mexico.  And . . . you entered the country during the 1980s, and that you are now present without having been properly admitted or paroled. [unintelligible] you've entered the country illegally." [Doc. No. 20-1, Ex. D at 14.] In fact, the only time the IJ mentioned Defendant's criminal conviction was when he stated:  "Your conviction makes you ineligible for any relief, so I'll have to order you removed." [Id. at 16.]  The transcript reveals that the IJ did not rely on Defendant's conviction as the basis for the removal.  Therefore, § 212(h), which by its terms waives certain criminal grounds of inadmissibility, would not on its own afford Defendant relief from removal as he was removed for being an alien present in the United States without being admitted or paroled.

During the hearing, Defendant conceded that if the ground for removal was not being properly admitted or paroled, a § 212(h) waiver on its own would not have afforded Defendant relief.  Defendant stated that the only relief that would have been available to Defendant is voluntary departure.  However, an alien who has been convicted of an aggravated felony is ineligible for voluntary departure. United States v. Ortiz-Lopez, 385 F.3d 1202, 1205 n.3 (9th Cir. 2004) (citing 8 U.S.C. § 1129c(a)).  A conviction for assault with a firearm under California Penal Code § 245(a)(2) is categorically an aggravated felony for immigration purposes.

1  Heron-Salinas, 566 F.3d at 899.  Defendant's conviction is thus for an aggravated

2  felony, which makes him ineligible for voluntary departure.

3        Rather, adjustment of status under INA § 245 could have afforded Defendant

4  relief.  In a case with similar facts, a defendant with a criminal conviction who was

5  removed because he was not paroled or admitted into the United States argued that

6  the IJ should have advised him of his possible eligibility for adjustment of status

7  under INA § 245 as relief from removal.  Arce-Hernandez, 163 F.3d at 563 (citing 8

8  U.S.C. § 1255(a); INA § 245(a)).

9        Under INA § 245, a defendant with a criminal conviction may seek "an

10  adjustment of his immigration status if he applied for the adjustment, obtained a

11  waiver of excludability, and had an immediately available visa" to obtain relief from

12  removal.  Arce-Hernandez, 163 F.3d at 563 (citing 8 U.S.C. § 1255(a); INA §

13  245(a)).  Section 212(h) "provides, under limited circumstances, for waiver of

14  excludability."  Arce-Hernandez, 163 F.3d at 563.

15        Defendant would have to argue that the IJ did not inform him about

16  adjustment of status as possible relief from removal, rather than § 212(h) on its own.

17  Because Defendant has a criminal conviction, in order to obtain adjustment of

18  status, he would need to, *inter alia*, seek a § 212(h) waiver of the criminal

19  conviction, which would otherwise bar him from adjusting his status.  See Arce-

20  Hernandez, 163 F.3d at 563 (citing 8 U.S.C. § 1255(a); INA § 245(a)).  The Court

21  proceeds as if Defendant sought relief under adjustment of status, as the analysis

22  regarding § 212(h) is the same as what was outlined by Defendant in his motion.[2]

23  Even assuming Defendant's due process rights were violated because he was not

24  informed about his eligibility for relief, Defendant is unable to show a plausible

25  ground for relief under § 212(h), as discussed below, which is required to adjust

26  status to waive Defendant's criminal conviction.

27

28
      [2] However, adjustment of status does have additional requirements which were not addressed by Defendant in his motion.

12cr1927

## 2.    Prejudice

"To establish prejudice, [a defendant] does not have to show that he actually would have been granted relief.  Instead, he must only show that he had a plausible ground for relief from deportation."  United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1050 (9th Cir. 2004) (internal quotation marks omitted).  A defendant can show that he suffered prejudice if he "was removed when he should not have been."  Camacho-Lopez, 450 F.3d at 930.  "Where the relevant form of relief is discretionary, the alien must make a plausible showing that the facts presented would cause the Attorney General to exercise discretion in his favor."  United States v. Barajas-Alvarado, 655 F.3d 1077, 1089 (9th Cir. 2011).  "[E]stablishing 'plausibility' requires more than establishing a mere 'possibility.'"  Id.  Once the defendant makes a prima facie showing that he had a plausible ground for relief, the burden shifts to the government to "demonstrate that the procedural violation could not have changed the proceedings' outcome."  United States v. Gonzalez-Valerio, 342 F.3d 1051, 1054 (9th Cir. 2003).

### a.    Adjustment of Status and § 212(h) Waiver

"[A] § 212(h) waiver will be granted only when there is 'great actual or prospective injury' or 'extreme impact' on the citizen family member, beyond the 'common results of deportation.'"  Arce-Hernandez, 163 F.3d at 564 (quoting Shooshtary v. INS, 39 F.3d 1049 (9th Cir. 1994)).  "The existence of family ties in the United States is the most important factor in determining hardship."  Arrieta, 224 F.3d at 1082.  However, "[t]he difficulties in having to move one's family elsewhere and anticipated difficulties in finding work have been held to constitute the common results of deportation."  Arce-Hernandez, 163 F.3d at 164.

In the following situations, the Ninth Circuit held that the defendants did not show extreme hardship.  Even though Defendant's wife was in ill health, the Arce-Hernandez court held that she would not suffer extreme hardship in having to relocate to Mexico or to stay in the United States without her husband; rather, the

12cr1927

court held that these were the "common results of the deportation of a convict." Id.
In Muro-Inclan, the Ninth Circuit found that a "brief, generalized declaration from
[the defendant's] wife, [which] state[d] that she needs his 'help in raising children
and providing for them. . . . [and] cannot provide everything they need without their
father's help'" was not sufficient to show extreme hardship. Muro-Inclan, 249 F.3d
at 1185. The Muro-Inclan court also noted the fact that Defendant was incarcerated
for 10 of the last 13 years. Id.

Defendant argues that his mother would have suffered extreme hardship at the
time of his deportation in 1997. He states that she suffered a "severe fall" in 1992
and "broke her arm and leg and was disabled." [Doc. No. 21, Decl. of Martin
Serrano-Guerra; Doc. No. 20-1, Def.'s Mot. at 8.] Defendant did not provide details
as to the extent and duration of his mother's disability. He states that he lived with
his mother, and provided for her "financially" and "emotionally." Defendant states
that he "would help his mother move around the house, cook her food, take her to
medical appointments, and generally provided care for her." [Id.; Doc. No. 21,
Decl. of Martin Serrano-Guerra.] Defendant also states that his sister married in
1994 and left the family home, which left only his brothers "to support the
household and their mother, financially and emotionally." [Id.; Doc. No. 20-1,
Def.'s Mot. at 8.] Defendant states that his mother "grew sick from worry about
[Defendant] since he was not there." [Id.; Doc. No. 21, Decl. of Martin Serrano-
Guerra] Defendant argues that his situation is similar to that of the defendant in
Arrieta, where the Ninth Circuit held that the defendant had shown extreme
hardship. Arrieta, 224 F.3d 1076.

The Government argues that Defendant cannot show extreme hardship to a
U.S. citizen or lawfully resident relative. Rather, "the hardships alleged by
[Defendant] represent[] the common results of deportation." [Doc. No. 23, Govt.'s
Opp. at 9-10.] The Government argues that Defendant "committed his criminal
offense in 1993, and was sentenced in 1994, which includes the time frame that he

12cr1927

and his brother claim their mother needed special assistance.  He was incarcerated for at minimum three years before his deportation in 1997."  [Id. at 11-12 (internal citation omitted).]  There were also other family members, Defendant's brothers, who were living with Defendant's mother at the time she needed assistance.  Finally, the Government argues that although Defendant states that his mother was "sick from worry" about him, it "does not indicate that there was any reason she could not communicate with him."  [Id. at 12.]

The Court finds that Defendant is unable to show extreme hardship to his mother, and therefore cannot show that he has a plausible ground for relief from removal under § 212(h) and adjustment of status.  The Court agrees with the Government that Defendant has not shown more than the common results of deportation.  Like in Muro-Inclan, Defendant's brother's declaration provides nothing more than a generalized statement that his mother needed some assistance after her injury.  At most, the declaration shows that Defendant's removal would be an inconvenience to the family.  [See Doc. No. 21, Decl. of Martin Serrano-Guerra.] Further, Defendant was incarcerated for some period of time before his removal, as was the defendant in Muro-Inclan.  Defendant was unable to provide for his mother both emotionally and financially during that time period.

Defendant's situation is distinguishable from Arrieta.  In Arrieta, the defendant, in addition to providing "significant financial support," played a "critical role" in raising his younger siblings because his mother was in very poor health. The defendant's mother had provided a detailed affidavit documenting the defendant's role in the family.  Arrieta, 224 F.3d at 1082.  The Ninth Circuit held that in Arrieta, "the deportation order would be separation rather than relocation." Id.  Here, Defendant does not produce such a strong showing that family unity would be affected.  Although he states that "[h]is deportation effected [sic] family unity," he only provides generalized statements that do not rise to the level of extreme hardship for his mother.  [Doc. No. 21, Decl. of Martin Serrano-Guerra.]

He also does not address the fact that he was incarcerated for a period of time before his removal.  Accordingly, Defendant is unable to show that his mother would have faced extreme hardship and is therefore unable to show plausible grounds for relief from removal.  As Defendant is unable to show that he suffered actual prejudice, his collateral attack on his removal order fails.

## CONCLUSION

For the reasons above, the Court **DENIES** Defendant's motion to dismiss the indictment due to invalid deportation.

**IT IS SO ORDERED.**

**DATED:**  April 12, 2013

**IRMA E. GONZALEZ**
**United States District Judge**

12cr1927